**WEINLEIN, Plaintiff, v. BEDFORD et, Defendants.**

Common Pleas Court, Franklin County.

No. 185831.   Decided January 21, 1955.

Luther L. Liggett, Marysville, for plaintiff.

Robert P. Barnhart, Howard F. Wehr, William C. Irish, Columbus, for defendants.

## OPINION

By GESSAMAN, J.

The evidence in this case was taken before the Honorable William C. Bryant, a former judge of this court on October 4, 1954. By agreement of counsel the case is now submitted to this court upon the transcript of the testimony and the briefs of counsel.

The evidence discloses that Alice Walton was the owner of property commonly referred to as 453 Nashoba Avenue, Columbus, Ohio; that on March 25, 1943, she executed a deed conveying that property to Norman Bedford, Sr., her son; that on the same date Norman Bedford, Sr., executed a deed to the property conveying it to the plaintiff, Marilyn Bedford Weinlein and Ellen Morgan and Norman Bedford, Jr. retaining unto himself, the Grantor, a life estate in the premises. Both of these deeds were filed for record on March 26, 1943, the deed from Norman Bedford, Sr., bearing the notation "mailed to Alice Walton, 453 Nashoba Avenue." The evidence further discloses that shortly after the death of Alice Walton, on November 14, 1951, both of these deeds were found in a tin box at her residence.

The evidence further discloses that on April 29, 1948, Ellen Morgan and Norman Bedford, Jr., reconveyed their interest in the property to Alice Walton and that on the same date the plaintiff executed a deed which purported to reconvey to Alice Walton her share of the property. The evidence further discloses that on this date the plaintiff was a minor and that she did not become of age until July 2, 1949. The plaintiff testified that she did not know what she was signing but that she signed the document because it had been sent to her by Alice Walton, her grandmother, with a request that she sign it and return it.

As we have already stated, Alice Walton died on November 14, 1951. By her will she devised whatever interest she had in the property to her son, Norman Bedford, Sr., and Helen Bedford, his wife. Norman Bedford, Sr., died intestate on August 6, 1952, and his share then descended to Helen Bedford, his wife and Norman Bedford, Jr., his son.

Counsel for the plaintiff contends that Marilyn Bedford Weinlein, the plaintiff, received an undivided one-third interest in the property by virtue of the deed of March 25, 1943, and that because of the fact that on April 29, 1948, she was a minor, the purported deed from her to Alice Walton, executed upon that date, was and is a nullity and therefore the plaintiff is still the owner of an undivided one-third interest in the property in question. She therefore prays for a partition of the property in this action.

Counsel for the defendants do not appear to claim that the deed from the plaintiff to Alice Walton on April 29, 1948, carries any force and effect, but they do contend that the plaintiff confirmed her deed executed on that date by her subsequent actions. They contend further that the purported deed from Norman Bedford, Sr., to the plaintiff and to others on November 25, 1943, is a nullity because of the fact that there was no delivery. The questions presented to the court are, therefore (1) Did the deed executed by Norman Bedford, Sr., to Marilyn Bedford Weinlein, et al., constitute a valid conveyance of the property,

and (2) Did the plaintiff confirm her deed to Alice Walton dated April 29, 1948, by subsequent actions.

There is no dispute in the evidence but that both deeds dated March 25, 1943, were left by someone with the Recorder of this county for recording. We therefore feel that we must apply the rule which appears to have been in existence in this state for many years, to the effect that when a man executes and acknowledges a deed and delivers it to the Recorder with unqualified instructions to record it, the reasonable presumption is, in the absence of any rebutting circumstances, that he means thereby to transfer his title. This rule was laid down by the Supreme Court many years ago in the case of **Mitchell, et al. v. Ryan, 3 Oh St 377**, and we find the following statement at pages 382 and 383 of the opinion:

"But while it is thus apparent that the mere act of delivery to a stranger is insufficient, it is equally clear that there is no precise form of words necessary to declare the intent. Anything that shows that the delivery is for the use of the grantee is enough. For the real question is, does the grantor by his act mean to part with his title? and whatever satisfactorily manifests this design is as good as an explicit declaration. Now it does seem to us that when a man executes and acknowledges a deed and delivers it to the recorder, with unqualified instructions to record it, as was done in the present case, the reasonable presumption, in the absence of any rebutting circumstance, is that he means thereby to transfer his title. And this presumption is powerfully strengthened when, as in the case before us, the grantee is a minor child of the grantor, and is at a great distance from him, so that the deed can not be delivered to her in person, and when, too, the circumstances tend to show that it is a gift, and a reasonable one, for aught that appears, for the grantor to make."

As the Court pointed out, this is a presumption that may be rebutted but the proof upon rebuttal must be clear. To this effect we quote again from the Ryan case at page 386 of the opinion:

"And here I would remark, that very clear proof ought to be made, to warrant a court in holding that a man who has executed and acknowledged a deed, and caused it to be recorded, did not mean thereby to part with his title. If such deeds could be overthrown by slight testimony, a door would be opened to the grossest fraud. The testimony should, therefore, do more than make a doubtful case. It should establish clearly, that the delivery for record was not for the use of the grantee."

We refer also to page 387 and 388 of the opinion:

"But where the grant is a pure, unqualified gift, I think the true rule is that the presumption of acceptance can be rebutted only by proof of dissent; and it matters not that the grantee never knew of the conveyance, for as his assent is presumed from its beneficial character, the presumption can be overthrown only by proof that he did know of and rejected it. If this is not so, how can a deed be made to an infant of such tender years as to be incapable of assent? Is it the law that if a father make a deed or gift to his infant child, and deliver it to the

recorder to be recorded for the use of the child, and to vest the estate in it, the deed is of no effect until the child grow to years of intelligence and give its consent? May the estate, in the meantime, be taken for the subsequently contracted debts of the father, or will the statute of limitations begin to run in favor of a trespasser upon the idea that the title remains in the adult? Or will the conveyance entirely fail, if either grantor or grantee die before the latter assent? I do not so understand the law. In such a case, the acceptance of the grantee is a presumption of law arising from the beneficial nature of the grant, and not a mere presumption of an actual acceptance. And for the same reason that the law makes the presumption, it does not allow it to be disproved by anything short of actual dissent."

The question is, therefore, as to whether or not the defendants have overcome by clear proof the presumption of delivery which resulted from the fact that the deeds were delivered to the Recorder of this county with unqualified instructions to record them.

Counsel for the defendants argue that since the deeds were not delivered to the grantees but rather were found in the tin box in Mrs. Walton's home after her death, there was no delivery of the deed and therefore no transfer of title from Norman Bedford, Sr., to the plaintiff and the two other grantees. Upon this point we call attention to the fact that the deed was not found in the possession of Norman Bedford, Sr., but rather in the possession of Alice Walton and, therefore, there is no evidence in the record to the effect that Norman Bedford, Sr., retained any control over the deed executed by him, and even though we should attach any significance to the fact that the deed was found in the tin box belonging to Alice Walton, we again refer to the Ryan case and specifically to the language of the Supreme Court at page 383 of the opinion:

"Much stress has sometimes been laid upon the fact of the grantor's possession of a deed after an alleged delivery of it; and it has been said that such subsequent possession is a very pregnant circumstance to show that the supposed delivery was not absolute. That this may often be the case is undeniable; but where the deed has been recorded, such subsequent possession is a very pregnant circumstance to show that the supposed delivery was not absolute. That this may often be the case is undeniable; but where the deed has been recorded, such subsequent possession is evidently entitled to much less consideration than where it has not."

There is further evidence in the record to the effect that both Alice Walton and Norman Bedford, Sr., intended by their deeds to transfer title. When the plaintiff was on the stand and was being cross-examined concerning the execution of her deed of April 29, 1948, she testified that "she (her grandmother) sent a note and said 'Will you please sign the paper and send it back to me' and since she was always good to me, I did." Since Alice Walton, some five years after she had executed her deed to her son, Norman Bedford, Sr., requested the plaintiff to reconvey her interest in the property, the logical conclusion seems to be that both Alice Walton and Norman Bedford, Sr., intended by their acts

of March 25, 1943, to transfer title to their respective grantees. Counsel for the defendants lay much emphasis upon the case of **Smith v. Ranck, et al** 37 O. O. 235, decided by the Common Pleas Court of Trumbull County, and affirmed by the Court of Appeals. In that case the plaintiff was seeking to set aside a deed which she had executed to her grandniece under the fear that her decease might be imminent and with the desire to make provision for the transfer at her death of the property in question. The deed was recorded in the office of the Recorder of Trumbull County. The opinion discloses that the plaintiff retained possession of the deed and that "she intended to retain control of the property during her lifetime and had no intention whatever of transferring the property until her decease to the grantee." The question involved in that case is stated by the court as follows at page 236 of the opinion:

"The question is whether a deed, possession of which is retained by the grantor with the intention of transferring title upon her death, operates to transfer title immediately by reason of its delivery for transfer and record, regardless of the grantor's intention."

As observed by the court at page 238 of the opinion "The transfer of property on death in this manner is not favored by law, * * *." Judgment accordingly was rendered setting aside and cancelling the deed. Obviously this case is distinguishable from the case at bar upon the facts involved and the question involved. We have also examined the case of **Knieble v. Wade, et al., 161 Oh St 294,** to which counsel for the defendants have referred. The facts in that case are not comparable to the facts in the case at bar nor does that case overrule or modify the rule laid down by the Supreme Court in the Ryan case, supra.

After a careful consideration of the evidence in this case, it is our opinion that the presumption which arose from the recording of the two deeds of March 25, 1943, has not been overcome and that therefore title passed to the plaintiff in this case.

Counsel for the defendants urge that the plaintiff confirmed her deed to Alice Walton, dated April 29, 1948, by her acts in regard to the estate of said Alice Walton. The evidence discloses that some time after the death of her grandmother, the plaintiff did sign a paper in connection with her estate although the document which she signed is not a part of the record that has been made. It appears, however, that it was a waiver or an entry of appearance. There is certainly not enough in the record to warrant the court in concluding that by her signature she attempted to confirm her deed of April 29, 1948, and to admit that her grandmother was the owner of the property in question. To do so would obviously be stretching the inference from the signing of that document, whatever it was, beyond all reason. On the contrary, the record discloses that Norman Bedford, Sr., who had retained a life estate in the property, died on August 6, 1952, and the file shows that this case which is an action as we have said to partition the property, was filed only shortly thereafter, namely, on August 21, 1952. It is well settled that there could be no partition of this property while the life

444

tenant was living. To this effect see **Syllabus 1** of the case of **Eberle v. Gaier, 89 Oh St 118.** Therefore, it is clear that the plaintiff not only did not confirm her deed of April 29, 1948, but on the contrary at the earliest possible moment, disaffirmed that deed by filing this action in partition. It is our opinion, therefore, that the plaintiff has done nothing to confirm her deed to Alice Walton, dated April 29, 1948.

We have not discussed the effect of the purported deed of plaintiff, dated April 29, 1948, in view of the fact that counsel for all parties apparently agree that since the plaintiff at that time was a minor, the purported deed is of no force or effect.

It is therefore the opinion of the Court that the plaintiff is the owner of an undivided one-third interest of the property in question, that the defendant Helen Bedford is the owner of an undivided three-sixths interest and that the defendant Norman Bedford is the owner of an undivided one-sixth interest. The plaintiff is, therefore, entitled to partition as prayed for. The plaintiff prays that an account be taken of the rents that have come into the hands of defendant Helen Bedford. This defendant admits that she has collected the rents since the death of her husband, Norman Bedford, Sr., but there is no testimony as to how much has been collected. We can only find, therefore, that in view of the conclusions already reached by the court, the plaintiff is entitled to one-third of the rents which the defendant, Helen Bedford, has collected.